UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

KRUTI DESAI, et al.,                                                                 Plaintiffs,

v.                                                              Civil Action No. 3:14-cv-459-DJH-DW

CHARTER COMMUNICATIONS, LLC,                                                Defendant.

* * * * *

## MEMORANDUM OPINION AND ORDER

Plaintiffs Kruti Desai, Melanie B. Fink, Belinda Gale Parkerson, Jeremy Parkerson, Daniel Popp, James Ross, and Carolyn Vincent are former employees of Defendant Charter Communications, LLC who were fired for accepting free computer printers offered to them by Charter's office-supply administrator. This action arises from a Charter employee's use of the term "Printer-gate" during a PowerPoint presentation to other employees after Plaintiffs' termination. Plaintiffs assert that Charter defamed them by implying that they engaged in illegal activity.

Charter has moved for summary judgment on Plaintiffs' remaining claim. (Docket No. 89) In connection with the briefing on the summary-judgment motion, Magistrate Judge Dave Whalin granted Plaintiffs' motion to unseal an investigative report that Charter claims is privileged and denied Charter's motion to strike certain affidavits submitted in support of Plaintiffs' summary-judgment response.[1] (D.N. 104) Charter objected to that ruling. (D.N. 105) For the reasons explained below, the Court will overrule Charter's objection and deny Charter's motion for summary judgment.

---

[1] Judge Whalin also granted motions to temporarily seal the investigative report and deposition testimony concerning it pending final resolution of the privilege issue by this Court. (*See* D.N. 104, PageID # 2431)

## I.     BACKGROUND

The facts underlying this case are largely undisputed.  Plaintiffs worked at Charter's call center in Louisville, Kentucky, in various capacities.  Each was given a Hewlett-Packard (HP) computer printer by Linda Showalter, an administrative assistant at Charter.  Plaintiffs maintain that they believed Showalter's distribution of printers was authorized by management.  Charter, however, considered Plaintiffs' acceptance of the printers to be a violation of its policy against removing company property without authorization, and it terminated most of the employees involved.

Approximately one month after Plaintiffs were fired, Charter Human Resources Manager Rodger Simms gave a PowerPoint presentation during a Charter leadership conference.  On a slide with the heading "Leadership and Judgment," Simms referred to "'Operation . . . ' Green-light, Buzz-kill, Printer-gate."  (D.N. 90-3, PageID # 1984 (ellipsis in original))  He encouraged employees to "[a]ct with Integrity and Character."  (*Id.*)  The notes for Simms's oral presentation accompanying the slide state: "Let's get the elephant in the room out in the open, how many of you have heard of . . . Operation codes for things that weren't right!  All examples of poor judgment.  Not bad people, people we know and love but they made the wrong choices."  (*Id.* (ellipsis in original))  Simms emphasized the importance of "integrity," "character," and having "the courage to do the right thing."  (*Id.*)  He also warned that "[k]nowing something isn't right and allowing it to continue is the same as you doing it!"  (*Id.*, PageID # 1985)  "Green-light" referred to an incident in which a Charter employee used a company credit card for personal benefit and was terminated as a result. (D.N. 89-3, PageID # 1539-40)  "Buzz-kill" involved the sale of illegal drugs on Charter property by Charter employees; those employees were also terminated.  (*Id.*, PageID # 1540; D.N. 90-5, PageID # 1991-92)

Plaintiffs sued Charter for defamation on the ground that "Charter made false statements alleging misconduct on the part of the Plaintiffs relating to the . . . distribution of Hewlett-Packard ink jet printers, including but not limited to the [PowerPoint] presentation."[2] (D.N. 7, PageID # 51) They contend that the use of the term "Printer-gate," particularly in conjunction with references to employee theft and drug-dealing, implied that their actions were criminal. (*See* D.N. 90, PageID # 1961-63) Charter seeks summary judgment on the grounds that "Printer-gate" is not defamatory and that any implication of wrongdoing by Plaintiffs was true.[3] (D.N. 89; D.N. 89-1)

## II.     ANALYSIS

Although the motion for summary judgment was filed first, the Court will begin with Charter's objection, which potentially eliminates certain evidence from consideration for summary-judgment purposes. Plaintiffs responded to Charter's objection (D.N. 106), again ignoring Local Rule 72.2, which provides that "[u]nless directed by the Court, no party may file any response to a written objection" to a nondispositive ruling. (*See* D.N. 81, PageID # 1426 & n.4 (noting Plaintiffs' failure to observe LR 72.2 in connection with Charter's earlier objection)) As the response violates LR 72.2 and the parties were previously admonished that such filings are improper, the Court will disregard both Plaintiffs' response and Charter's similarly unauthorized reply (D.N. 108) when considering Charter's objection.

### A.     Objection

A magistrate judge's ruling on a nondispositive matter may be reconsidered if it is shown to be "clearly erroneous or contrary to law." 28 U.S.C. § 636(b)(1)(A); *see also* Fed. R. Civ. P.

---

[2] Plaintiffs also asserted claims of wrongful termination and intentional infliction of emotional distress, which were dismissed under Rule 12(b)(6) (*see* D.N. 15), and conversion, which was dismissed by stipulation. (*See* D.N. 45)
[3] The Court rejected Charter's untimely attempt to assert qualified privilege. (D.N. 81)

72(a) ("The district judge in the case must consider timely objections [to nondispositive rulings by the magistrate judge] and modify or set aside any part of the order that is clearly erroneous or is contrary to law."). Charter contends that Judge Whalin clearly erred in denying its motion to strike the Parkerson, Little, and Eversole affidavits and in granting Plaintiffs' motion to unseal the investigative report. (D.N. 105)

### 1. Investigative Report

Charter first objects to Judge Whalin's conclusion that an investigative report prepared by Rodger Simms prior to Plaintiffs' termination is not protected by the attorney-client privilege and thus should not be sealed in the record. (D.N. 105, PageID # 2434-36; *see* D.N. 104, PageID # 2405-15) Charter disclosed the report to Plaintiffs on the condition that it would be for attorneys' eyes only. (*See* D.N. 93, PageID # 2180) Nevertheless, Plaintiffs filed the report in the record, arguing that no privilege applied and that the Court should therefore order the report unsealed and consider it for purposes of summary judgment. (D.N. 91) Judge Whalin agreed that the report was not privileged and granted Plaintiffs' motion to unseal it. (D.N. 104, PageID # 2414-15)

There is "a strong presumption in favor of openness regarding court records, and thus "[s]hielding material in court records . . . should be done only if there is a 'compelling reason why certain documents or portions thereof should be sealed.'" *Rudd Equip. Co. v. John Deere Constr. & Forestry Co.*, 834 F.3d 589, 593 (2016) (quoting *Shane Grp., Inc. v. Blue Cross Blue Shield*, 825 F.3d 299, 305 (6th Cir. 2016)). "'[I]n civil litigation, only trade secrets, information covered by a recognized privilege (such as the attorney-client privilege), and information required by statute to be maintained in confidence . . .' is typically enough to overcome the presumption of [public] access [to court records]." *Shane Grp.*, 825 F.3d at 308 (quoting *Baxter*

*Int'l, Inc. v. Abbott Labs.*, 297 F.3d 544, 547 (7th Cir. 2002)).  The burden is on Charter to show that the privilege applies and that sealing thus is appropriate.  *See id.* at 305 (citing *In re Cendant Corp.*, 260 F.3d 183, 194 (3d Cir. 2001)).

Because Plaintiffs' remaining claim arises under Kentucky law, Kentucky privilege rules apply.  *See* Fed. R. Evid. 501 ("[I]n a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision.").  The Kentucky Supreme Court has "recognized 'three salient princip[le]s' regarding attorney-client privilege: broad discovery exists for non-privileged matters[;] 'the party asserting a privilege must prove its applicability[';] and the courts should strictly construe privileges because they constrain the public's right to evidence." *Cardinal Aluminum Co. v. Cont'l Cas. Co.*, No. 3:14-CV-857-TBR-LLK, 2015 U.S. Dist. LEXIS 95361, at *6 (W.D. Ky. July 22, 2015) (footnote omitted) (quoting *Haney v. Yates*, 40 S.W.3d 352, 355 (Ky. 2000)).  The privilege is set out in Kentucky Rule of Evidence 503, which provides that "a confidential communication made for the purpose of facilitating the rendition of professional legal services to the client . . . [b]etween the client or a representative of the client and the client's lawyer or a representative of the lawyer" is privileged.  Ky. R. Evid. 503(b).  Here, the parties dispute whether the investigative report was created to facilitate the rendition of legal advice.  (*See* D.N. 91-1; D.N. 96, PageID # 2353-54; D.N. 105, PageID # 2434-36)

Even if the report was privileged at the time of its creation, however, it lost that protection when Charter voluntarily disclosed it to Plaintiffs.  Kentucky Rule of Evidence 509 provides: "A person upon whom these rules confer a privilege against disclosure waives the privilege if he or his predecessor while holder of the privilege voluntarily discloses or consents to disclosure of any significant part of the privilege[d] matter."  Ky. R. Evid. 509; *see Lexington*

*Pub. Library v. Clark*, 90 S.W.3d 53, 61 (Ky. 2002) ("Communications that occur in confidence lose their confidentiality (and the protection of the privilege) if the client voluntarily discloses them to third persons." (quoting Robert G. Lawson, *The Kentucky Evidence Law Handbook* § 5.10, at 236 (3d ed. Michie 1993))). Thus, by willingly giving a copy of the report to Plaintiffs' counsel (*see* D.N. 93), Charter waived any attorney-client privilege that might otherwise have applied, and the report may not be sealed on the basis of privilege.

Charter also contends that Judge Whalin clearly erred by failing to consider Plaintiffs' violation of the parties' agreement that the report would be for attorneys' eyes only. (D.N. 105, PageID # 2436; *see* D.N. 93, PageID # 2180) While Plaintiffs' counsel's failure to abide by that agreement is less than admirable, neither the law of the Sixth Circuit nor the rules of this Court permit sealing of court records based on an agreement between parties. *See* LR 5.7(c) ("Reference to a stipulation that allows a party to designate certain documents as confidential is not sufficient grounds to establish that a document, or portions thereof[,] warrants filing under seal."); *Shane Grp.*, 825 F.3d at 307 ("A court's obligation to keep its records open for public inspection is not conditioned on an objection from anybody."). The only potentially valid basis identified by Charter for sealing the investigative report is the attorney-client privilege—which, as explained above, is inapplicable here. In the absence of any other "compelling reason," *Rudd Equipment Co.*, 834 F.3d at 593 (citation omitted), the Court finds no clear error in Judge Whalin's decision to unseal the report.

### 2. Little, Parkerson, and Eversole Affidavits

Charter also challenges Judge Whalin's decision not to strike the affidavits of Jeremy Parkerson, Samantha Little, and James Eversole. (D.N. 105, PageID # 2436-37) Charter complains that Little and Parkerson's affidavits "[i]ncluded impermissible hearsay." (*Id.*,

PageID # 2436)   However, Judge Whalin found that these affidavits were admissible for a number of purposes other than to prove the truth of the matters asserted.  (*See* D.N. 104, PageID # 2419-25)   The fact that a statement could also be offered for its truth does not render it inadmissible.  *See, e.g.*, *Great W. Cas. Co. v. Flandrich*, No. C2-07-CV-1002, 2010 U.S. Dist. LEXIS 47173, at \*6 (S.D. Ohio Apr. 2, 2010) (denying motion to exclude statements for which there were "two possible purposes," one hearsay and one not; statements were "admissible for the limited purpose of showing the effect they had on [the defendant]").  Moreover, the fact that Judge Whalin declined to follow *Ungerbuehler v. Federal Deposit Insurance Corp.*, No. 5:08-CV-20-REW, 2010 U.S. Dist. LEXIS 98563 (E.D. Ky. Sept. 20, 2010), does not warrant reversal (*see* D.N. 105, PageID # 2437), as *Ungerbuehler* is not binding on this Court in any event.  *See Am. Elec. Power Co. v. Connecticut*, 564 U.S. 410, 131 S. Ct. 2527, 2540, 180 L. Ed. 2d 435 (2011) ("[F]ederal district judges, sitting as sole adjudicators, lack authority to render precedential decisions binding other judges, even members of the same court.").

The Court likewise finds no clear error in Judge Whalin's treatment of the Eversole affidavit.  Although Charter contends that Eversole's statements are inadmissible because they were obtained in violation of Kentucky Supreme Court Rule 4.2, it cites no binding precedent that would require exclusion of the affidavit on this ground.  (*See* D.N. 105, PageID # 2437-38) Judge Whalin examined the affidavit and the parties' arguments at length and determined that there was insufficient proof of Eversole's managerial status at Charter; no evidence of "trickery, hoax[,] or fabrication" by Plaintiffs in acquiring the affidavit; and little chance of prejudice to

Charter if the affidavit were considered.[4]  (D.N. 104, PageID # 2429; *see id.*, PageID # 2428-30)

Charter has not established that this conclusion was clearly erroneous.

      **B.**      **Summary Judgment**

Summary judgment is required when the moving party shows, using evidence in the record, "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see* 56(c)(1).  For purposes of summary judgment, the Court must view the evidence in the light most favorable to the nonmoving party. *Loyd v. Saint Joseph Mercy Oakland*, 766 F.3d 580, 588 (6th Cir. 2014) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)).  However, the Court "need consider only the cited materials."  Fed. R. Civ. P. 56(c)(3); *see Shreve v. Franklin Cty., Ohio*, 743 F.3d 126, 136 (6th Cir. 2014).  If the nonmoving party "fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c)," the fact may be treated as undisputed.  Fed. R. Civ. P. 56(e)(2)-(3).  To survive a motion for summary judgment, the nonmoving party must establish a genuine issue of material fact with respect to each element of each of his claims.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986) (noting that "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial").

Under Kentucky law, a defamation claim consists of four elements: "(a) a false and defamatory statement concerning another; (b) an unprivileged publication to a third party; (c) fault amounting at least to negligence on the part of the publisher; and (d) either actionability of the statement irrespective of special harm or the existence of special harm caused by the

---

[4]  In its objection, Charter does not contend that it would be prejudiced by admission of Eversole's affidavit; rather, it merely asserts that "[s]ince Plaintiffs never sought or obtained permission to speak with Eversole, the denial of Charter's motion to strike his wrongfully obtained affidavit was clearly erroneous and should be overruled." (D.N. 105, PageID # 2438)

publication." *Toler v. Süd-Chemie, Inc.*, 458 S.W.3d 276, 282 (Ky. 2014) (quoting Restatement (Second) of Torts § 558 (1977)). The primary issue in this case is whether Simms's presentation contained defamatory language about Plaintiffs. "'Defamatory language' is broadly construed as language that 'tends so to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him.'" *Stringer v. Wal-Mart Stores, Inc.*, 151 S.W.3d 781, 793 (Ky. 2004) (quoting Restatement (Second) of Torts § 559), *overruled in part on other grounds by Toler*, 458 S.W.3d 276. A plaintiff "need not be specifically identified in the defamatory matter itself so long as it was so reasonably understood by [the] plaintiff[']s 'friends and acquaintances . . . familiar with the incident.'" *Id.* at 794 (omission in original) (quoting *E.W. Scripps Co. v. Cholmondelay*, 569 S.W.2d 700, 702 (1978)).

Certain statements are "actionable per se," meaning that they give rise to "a conclusive presumption of both malice and damage." *Toler*, 458 S.W.3d at 282 (quoting *Stringer*, 151 S.W.3d at 794). These include "false accusation[s] of theft." *Stringer*, 151 S.W.3d at 795 (quoting 50 Am. Jur. 2d *Libel and Slander* § 185 at 465 (1995)). If the Court finds that "the statement complained of is capable of bearing a defamatory meaning," then "it is for the jury to determine . . . whether a defamatory meaning was attributed to it by those who received the communication. The terms should be construed in their most natural meaning and should be measured by the natural and probable effect on the mind of the average reader [or listener]." *Yancey v. Hamilton*, 786 S.W.2d 854, 858-59 (Ky. 1989). And "where the words at issue are capable of more than one meaning, . . . the jury should decide which of the meanings a recipient of the message would attribute to it." *Id.* (citations omitted).

Here, the Little and Eversole affidavits show that at least some Charter employees who attended Simms's presentation interpreted "Printer-gate" as referring to illegal activity by

Plaintiffs. (D.N. 90-18, PageID # 2145 ("I viewed the term [Printer-gate] as referencing those who were terminated. I also understood the term to be derogatory and indicating they had engaged in illegal behavior."); D.N. 90-19, PageID # 2146 ("I understood the use of the term 'gate' as meaning that management viewed the individuals [who took printers] in a derogatory fashion and that they considered the printers to be stolen.")) Moreover, Printer-gate was mentioned in the same breath as Buzz-kill and Green-light, both of which involved criminal activity. (D.N. 90-3, PageID # 1984; *see* D.N. 89-3, PageID # 1539-40; D.N. 90-5, PageID # 1991-92) The employees involved in all three incidents were labeled by Simms as lacking integrity, character, and good judgment. (*See* D.N. 90-3, PageID # 1984) Construing these facts in the light most favorable to Plaintiffs, Simms's reference to "Printer-gate" imputed criminal conduct—theft—to Plaintiffs. Kentucky law is clear that such statements amount to defamation per se. *Stringer*, 151 S.W.3d at 795 (listing statements imputing "felonious misappropriation to the plaintiff" found by Kentucky courts to be slanderous per se, including both direct and indirect accusations of theft (quoting David A. Elder, *Kentucky Tort Law: Defamation and the Right of Privacy* § 1.07(C)(1)(b) at 68 (1983))).

Charter asserts the defense of truth, arguing that Plaintiffs indisputably took the printers without "the requisite authorization." (D.N. 89-1, PageID # 1509) Viewed in the light most favorable to Plaintiffs, however, Simms's comments implied not merely that Plaintiffs "accept[ed] printers without authorization" (*id.*), but that their actions were illegal. Charter does not contend that Plaintiffs acted with criminal intent notwithstanding their failure to follow the proper procedure for acquiring the printers. Indeed, the evidence suggests that Plaintiffs made no attempt to hide their actions: Showalter testified that printers were openly loaded into employees' cars, sometimes in view of facility manager Doug Bruenderman, and that "[t]here

10

was . . . nothing secretive to it." (D.N. 90-9, PageID # 2063; *see id.*, PageID # 2064)  Charter thus has not met its burden to establish the truth of the allegedly defamatory statement.  *See Stringer*, 151 S.W.3d at 796.

The Court rejects Charter's attempts to reframe the inquiry by isolating the term "Printer-gate." (*See* D.N. 89-1, PageID # 1499-1503, 1505-06; D.N. 94, PageID # 2187-89)  As even Charter acknowledges, an allegedly defamatory statement must be considered "in the whole context of its publication."  *Yancey*, 786 S.W.2d at 857.  (*See* D.N. 94, PageID # 2187 ("Particular words cannot be stripped of their context.  They *must* be evaluated in context." (citation omitted)))  By lumping Printer-gate (and therefore Plaintiffs) together with criminal incidents and indicating that the employees involved in those incidents lacked integrity, Simms arguably painted Plaintiffs as criminals.  Contrary to Charter's contention (*see id.*), Simms's comment that the employees associated with the three scandals were "not bad people" but "people we know and love" does not preclude a finding that his language was defamatory.  *See Yancey*, 786 S.W.2d at 857-58 (agreeing with trial court that "the article including the alleged defamatory language . . . contained a number of favorable comments concerning" the plaintiff but nevertheless concluding that a certain statement in the article was "capable of bearing a defamatory meaning").  Finally, Charter cites no Kentucky cases in support of its argument that "accusations of single instances of mistake or misconduct are not defamatory" (D.N. 94, PageID # 2187), and the Court is aware of none.  In any event, as discussed above, the language at issue here could be interpreted as going beyond a mere accusation of mistake or misconduct.

**III. CONCLUSION**

Because a genuine dispute of material fact remains as to Plaintiffs' defamation claim, summary judgment is not warranted. Accordingly, and the Court being otherwise sufficiently advised, it is hereby

**ORDERED** as follows:

(1)     Charter's objection to the magistrate judge's June 13, 2017 Order (D.N. 105) is **OVERRULED**. The Clerk of Court is **DIRECTED** to unseal the investigative report prepared by Rodger Simms (D.N. 93).

(2)     Charter's motion for summary judgment (D.N. 89) is **DENIED**.

January 4, 2018

**David J. Hale, Judge**
**United States District Court**